## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * |  |
| **UNITED STATES OF AMERICA** | * | **Case No.   RDB 12-0668** |
| vs. | * |  |
| **MELTEM MERAL** |  |  |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### MOTION TO RECONSIDER

The defendant, Meltem Meral, by and through her attorneys Nicholas J. Vitek, and Vitek

Law LLC, hereby moves this Honorable Court to reconsider its Order of Detention entered on

January 18, 2013.

### A. *Preliminary Background – All Parties Agree That But For An Immigration Detainer, Ms. Meral Would Be Eligible For Release On Pretrial Conditions.*

During a hearing held on January 18, 2013, this Court concluded that Ms. Meral should

be detained because of her status as a non-citizen and because of the pendency of an immigration

detainer lodged against Mr. Meral by the Immigration and Customs Enforcement arm of the

Department of Homeland Security.  During the hearing, the United States moved for Ms. Meral's

detention based on "risk of flight" and based its argument largely on the fact that there is an

immigration detainer lodged against her.  Ms. Meral has been in the United States since 2004

when she entered the country lawfully.  Since 2004, she has graduated from Anne Arundel

Community College, is now a fully employed teacher at Howard Community College, and has

enrolled to be a full time student at University of Maryland Baltimore County.  She is also the

1

mother of a five-year old United States citizen.  Ms. Meral has never been accused of any crime

prior to this accusation, and as such, has had no prior contacts with the criminal justice system.[1]

In fact, counsel for the United States, Michael Cunningham, stated that it was his belief

that conditions of release could be fashioned that would assure her appearance in Court, even

though there was an immigration detainer lodged against her.  In addition, although the Pretrial

Services Report indicated it did not recommend release, this was based entirely on the

immigration detainer.  In conversations with undersigned counsel, the Pretrial Services Officer

stated that absent an immigration detainer she would recommend Ms. Meral's release.

During the detention hearing, argument revolved solely upon the immigration detainer

and the Court indicated that absent the pendency of the immigration detainer, it would be

inclined to follow the parties' agreement that she should be released with conditions that would

assure her continued appearance for trial.  In fact, the Court stated that Ms. Meral should return

to court if new information surrounding the immigration hold came to light that would alter the

Court's conclusion regarding her release.  Undersigned counsel, after researching the issue for

comparable cases as well as a more thorough analysis of the statute, believes that such

information is now available that would alter the Court's conclusion.  As such, Ms. Meral moves

for the Court to reconsider its Order of Detention and to release Ms. Meral with conditions of

release.

---

[1] However, even *if* Ms. Meral were convicted of the crimes against her, after trial, the recommended guideline sentence for her will be 0-6 months in jail.  The crime she is accused of is one of only a handful, out of the roughly 150 crimes that are enumerated in the Federal Sentencing Guidelines, which recommend a non-jail sentence.  Stated plainly, it is one of the *least* severe crimes that one can be accused of in Federal Court.

### B. Congress Did Not Intend That An Immigration Hold Be The Basis For Detention Under 18 U.S.C. § 3142.

The presumption is that an individual charged with a Federal crime should be released. See 18 U.S.C. § 3142(b). It is only *if* the government establishes, by a preponderance of the evidence, that the *defendant* is a **serious** risk for flight and that no condition or combination of conditions would reasonably assure the defendant's presence at trial, that the court can consider detention. Id. The focus here is on the ***defendant's*** risk of flight. See 18 U.S.C. § 3142(g) ("factors to be considered…history and characteristics of *the person*, *the person's* character…whether, at the time of the current offense or arrest, *the person* was on probation[.]") see also United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. 1986) ("the court is obliged to determine . . . *whether the defendant is likely to flee the jurisdiction if released*") (emphasis added); United States v. Patriarca, 948 F.2d 789, 791 (1st Cir. 1991) (a court must inquire whether "*the defendant poses* a … risk of flight") (emphasis added).

Here, the fact that Immigration and Custom's enforcement has lodged a detainer has no bearing on whether *Ms. Meral* is a flight risk. For example in United States v. Villanueva-Martinez, 707 F.Supp.2d 855, 856 (N.D. Iowa 2010), the government sought detention of a non-citizen based on risk of flight due to an immigration detainer. During the detention hearing, the government adduced evidence that if the defendant was released pretrial, ICE would take her into custody and there was the possibility that the defendant would be deported before he was brought to answer charges in the Federal case. Id. The ICE Agent testified that that ICE could remove the defendant even if the prosecutor attempted to keep the defendant in the United States to face the federal charges. Id. at 857. These are the same arguments advanced by the United States in support of Ms. Meral's detention. In Villanueva-Martinez, as here, the district court noted that if not for the threat of deportation by ICE, the defendant would have been eligible for pretrial release. Id.

The district court released the defendant despite the immigration hold because the Bail

Reform does not permit the court "to speculate on the 'risk' that a defendant would not appear in

this court due to his being removed from this country by the same government that is prosecuting

him." Id. at 857 citing United States v. Montoya-Vasquez, 2009 WL 103596 (D. Neb. Jan 13,

2009) (Piester, M.J.)  In rejecting the government's motion for continued detention based on the

risk of removal, the district court stated that "[t]here is no predicting the actions of ICE because

the defendant is not in its physical custody, and the ICE Immigration Judge will not address his

eligibility for bail until he is in its physical custody.  In other words, I cannot address the risk of

ICE removing the defendant …without speculating [and s]peculation is not evidence much less

preponderance evidence."  Id. quoting Montoya-Vaquea, at 4.  In concluding that the

immigration detainer was no basis to detain the defendant, the district court concluded that

"'failure to appear' as used in the Bail Reform Act is limited to the risk that the defendant may

flee or abscond, that is, that he would fail to appear by virtue of his own volition, actions and

will.  If the government, through ICE or any other authority, prevents his appearance, he has not

'failed to appear.'" Id. at 857; see also United States v. Barrera-Omana, No. 09-CR-

47(JMR/JJK), 2009 WL 2219080 at *2-3 (D. Minn. Jul. 23, 2009) (rejecting government's

argument that "it needs protection from ICE and its threat of expulsion" and concluding that

"[t]he risk of nonappearance . . . has to involve an element of volition").

### C. The Process For Instances Where There Is An Immigration Hold Is To Provide The United States 10 Days To Elect Whether To Proceed With The Immigration Case Or The Criminal Case.

Obviously, there are instances, such as here, where a defendant may have a detainer

lodged against him or by another agency.  Congress could have, but did not, conclude that in

such cases this would result in the automatic detention of the defendant.  Instead, Congress

created 18 U.S.C. § 3142(d) which states that in situations where:

the judicial officer determines that—

(1) such person—

       B.  is not a citizen of the United States or lawfully admitted for permanent residence…; and

(2) such person may flee ….;

such judicial officer shall order the detention of such person, for a period of **not more than ten days**, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. **If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, <u>notwithstanding</u> the applicability of other provisions of law governing release pending trial or <u>deportation or exclusion proceedings</u>**.

(emphasis added)

As such, it is Congress's *direction* that the Court releases a defendant with an immigration issue into immigration custody and that if the immigration services chooses to not take custody, the defendant shall be treated as anyone else. Simply, immigration is not to be used as a barrier to a release, but in fact, should be addressed *before* the criminal case. Thus, the statute makes only one special provision for non-citizen defendants who are not lawful permanent residents (or defendants subject to custody on a different criminal charge or on a charge of revocation of parole or probation)—it permits the prosecution a 10-day window in which to notify the other government agency that might assert custody over the defendant, and gives that agency an opportunity to take custody of the defendant. In the case of a non-citizen defendant, if ICE elects not to take custody, then the bail statute provides that the defendant's bail application should be adjudicated under the regular provisions of Section 3142. In essence,

if ICE declines to take custody, then Section 3142(d) "admonish[es]. . . courts not to use the immigration status of defendants against them or as the sole basis of a detention determination." United States v. Todd, No. 2:08cr197-MHT, 2009 WL 174957 at *2 n.2 (M.D. Ala. Jan. 23, 2009); cf. United States. v. Himler, 797 F.2d 156, 161 (3d Cir. 1986) (rejecting government's argument that an outstanding warrant made defendant a flight risk and noting that under Section 3142(d), "outstanding detainers and warrants, absent other evidence, do not require pretrial detention on the[criminal] charges here").

Congress thus specifically addressed the circumstance of a federal criminal defendant who is subject to a competing request for custody. In such circumstances, Section 3142(d) provides for a sensible mechanism by which the agencies seeking custody shall determine the order in which the defendant should answer to the two charges—that is, whether the federal criminal prosecution should go forward with the other agency to take custody after the criminal case is resolved, or whether the federal prosecutor will relinquish the defendant for the other proceeding.  Section 3142(d) clearly provides that if the other agency (whether it be a parole officer, or another prosecuting authority, or ICE) does not take custody of the defendant, then the district court shall treat the defendant's bail application like any other, without regard to the existence of the other pending proceeding.

Federal courts have followed the plain language of Section 3142(d) and held that if the government takes the former election to go forward with the criminal prosecution first, then the defendant is eligible for release on bail pursuant to the regular provisions of 18 U.S.C. § 3142, without regard to the existence of an ICE detainer, immigration detention statutes, or any other factors other than the ordinary statutory considerations of flight risk and danger to the community.  For example, in United States v. Xulam, 84 F.3d 441 (D.C. Cir. 1996), the D.C. Circuit reversed a district court order that had denied bail to a defendant on the ground that he

was subject to deportation proceedings.  The Court of Appeals specifically pointed to 18 U.S.C. § 3142(d), noting that if immigration authorities decline to take a defendant into custody during the prescribed 10-day period, then the defendant should be subject to the ordinary provisions of the Bail Reform Act. Id. at 444.  "When the government [does] not move . . . for temporary detention under section 3142(d), it does not seem legitimate for it to now introduce the specter of a possible deportation through the back door as a principal reason for detention."  Id.

Similarly, in United States v. Adomako, 150 F. Supp. 2d 1302 (M.D. Fla. 2001), the district court ordered the defendant's release on a bond with conditions of supervision, but the Department of Justice refused to release him because of an administrative detainer issued by the Immigration and Naturalization Service (INS), the predecessor agency to ICE.  Id. at 1303. Recognizing the plain language of 18 U.S.C. § 3142(d), the district court rejected the government's arguments that INS could carry out the deportation of the defendant at any time and that therefore the administrative detention provisions of the Immigration and Nationality Act should apply to the detention of the defendant in the criminal case. Id. at 1305, 1307.  Adomako correctly concludes that under 18 U.S.C. § 3142(d), a criminal defendant "is not barred from release because he is a deportable alien." Id. at 1307. See also United States v. Chavez-Rivas, 536 F. Supp. 2d 962, 964 (E.D. Wis. 2008) (rejecting government's argument that potential detention and deportation provided a basis for pretrial detention and holding that § 3142(d) requires the court "to treat defendant like any other offender under the Bail Reform Act").

### D. Based On The Prevailing Law And Statutory Framework, This Court Should Release Ms. Meral.

Because Ms. Meral's pending immigration detainer cannot be used against her as a "serious risk of flight" and Congress's intention that where there is an immigration detainer, like here, the defendant be released to that detainer, this Court should release Ms. Meral.  Once in

immigration custody, she will still be in the custody of the United States.  As the court in

Adomako noted, whether the defendant is in immigration custody or the Marshals Service

custody, "the appearance of defendant at trial in such circumstances is entirely within the

government's control." <u>Adomako</u>, 150 F. Supp. 2d at 130. Moreover, courts have rejected the

argument the government makes here: that the "[c]ourt must detain [her] or the government will

be compelled to deport her, thereby depriving the government of the opportunity to prosecute

[her]." See <u>United States v. Rembao-Renteria</u>,  2007 WL 2908137, at *2 (D. Minn. Oct. 2,

2007).  The Bail Reform Act does not permit the court to "save the government from itself in this

way." <u>Id.</u>

Instead, the Act requires that the court consider whether defendant is likely to fail to

appear as a result of her own volitional act, not whether she may fail to appear as a result of a

government decision to make her unavailable for trial.  There is nothing regarding Ms. Meral's

background or the seriousness of the offense which would warrant a conclusion that she is a

serious risk for flight.  The only valid argument is that the United States will place in her in

deportation proceedings and will be removed.  However, even within that argument, the United

States has the power to delay her removal.   The Department of Homeland Security has

regulations that prohibit the departure when that departure is deemed "prejudicial to the interests

of the United States." 8 C.F.R. § 215.3.[2]   Subsection (g) of 8 C.F.R. § 215.3 states that:

> Any alien who is needed in the United States as a
> witness in, or **as a party to, any criminal** case
> **under investigation or pending in a court in the
> United States**: Provided, That any alien who is a
> witness in, or a party to, any criminal case pending
> in any criminal court proceeding may be permitted
> to depart from the United States with the consent of
> the appropriate prosecuting authority, unless such
> alien is otherwise prohibited from departing under
> the provisions of this part.

---

[2] In the removal context,  8 C.F.R. 239.2(a)(7) permits immigration authorities to cancel a notice to appear "when
the circumstances is no longer in the best interest of the government."

An accompanying regulation provides that: "[an ICE] departure-control officer who knows or has reason to believe that the case of an alien in the United States comes within the provisions of § 215.3 shall temporarily prevent the departure of such alien from the United States and shall serve him with a written temporary order directing him not to depart, or attempt to depart, from the United States until notified of the revocation of the order."  8 C.F.R. § 215.2(a). As such, once the prosecutor informs ICE that a non-citizen is a defendant in a criminal case, ICE would not be permitted to remove the non-citizen.

WHEREFORE, Ms. Meral respectfully requests that she be released.

Respectfully submitted,


_____/s/_____
Nicholas J. Vitek #29062
VITEK LAW LLC
Suite 1102
The American Building
231 E. Baltimore Street
Baltimore, Maryland 21202
P: (410) 317-8500
F: (410) 317-8511
vitek@viteklaw.com